UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

WACO S. WIGGINS,

                 Plaintiff,                         Case No.: 3:14-cv-360

   vs.

COMMISSIONER OF                         District Judge Walter H. Rice
SOCAL SECURITY,                  Magistrate Judge Michael J. Newman

           Defendant.

---

**REPORT AND RECOMMENDATION[1] THAT: (1) THE ALJ'S NON-DISABILITY FINDING BE FOUND UNSUPPORTED BY SUBSTANTIAL EVIDENCE, AND REVERSED; (2) THIS MATTER BE REMANDED TO THE COMMISSIONER UNDER THE FOURTH SENTENCE OF 42 U.S.C. § 405(g) FOR PROCEEDINGS CONSISTENT WITH THIS OPINION; AND (3) THIS CASE BE CLOSED**

---

        This is a Social Security disability benefits appeal. At issue is whether the is whether the Administrative Law Judge ("ALJ") erred in finding Plaintiff not "disabled" and therefore unentitled to Disability Insurance Benefits ("DIB") and/or Supplemental Security Income ("SSI").[2] This case is before the Court upon Plaintiff's Statement of Errors (doc. 8), the Commissioner's memorandum in opposition (doc. 11), the administrative record (doc. 6),[3] and the record as a whole.

---

       [1]Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendation.

       [2] "The Commissioner's regulations governing the evaluation of disability for DIB and SSI are identical . . . and are found at 20 C.F.R. § 404.1520, and 20 C.F.R. § 416.920 respectively." *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). Citations in this Decision and Entry to DIB regulations are made with full knowledge of the corresponding SSI regulations, and *vice versa*.

       [3] Hereafter, citations to the electronically-filed administrative record will refer only to the PageID number.

# I.

## A.    Procedural History

Plaintiff filed for DIB and SSI on February 9, 2011 alleging a disability onset date of December 31, 1998.  PageID 281-88.  Plaintiff claims disability as a result of a number of mental impairments including, *inter alia*, anxiety, attention deficit hyperactivity disorder ("ADHD"), bipolar disorder, and obsessive compulsive disorder ("OCD").  PageID 83.

After initial denials of his applications, Plaintiff received hearings before ALJ Jessica Inouye on July 19, 2012 and May 14, 2013.  PageID 100-44.  The ALJ issued a written decision on June 11, 2013 finding Plaintiff not disabled.  PageID 80-92.  Specifically, the ALJ's findings were as follows:

1.    The claimant meets the insured status requirements of the Social Security Act through June 30, 2000.

2.    The claimant has not engaged in substantial gainful activity since December 31, 1998, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3.    The claimant has the following severe impairments: anxiety, borderline personality disorder, [ADHD], attention deficit disorder (ADD), bipolar disorder, and traits of [OCD] (20 CFR 404.1520(c) and 416.920(c)).

4.    The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5.    After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity ["RFC"] to perform a full range of work at all exertional levels but with the following non-exertional limitations: this work should be unskilled, simple, routine, and repetitive. The work should not require any strict production standards, such as a high, fast-paced type of assembly line.  The work should be predictable and routine, meaning not more than occasional changes in the work and not

2

more than occasional decision making in the types of tasks that the claimant will perform as a part of the work. Further, the claimant should be limited to avoiding concentrated exposure to unprotected heights and dangerous, moving machinery.

6. The claimant is unable to perform any [of his] past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born [in] 1975 and was 23 years old, which is defined as a younger aged individual 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and [RFC], there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from December 31, 1998, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

PageID 82-92.

Thereafter, the Appeals Council denied Plaintiff's request for review, making the ALJ's non-disability finding the final administrative decision of the Commissioner. PageID 53-55. Plaintiff then filed this timely appeal. *Cook v. Comm'r of Soc. Sec.*, 480 F.3d 432, 435 (6th Cir. 2007) (noting that, "[u]nder the Federal Rules of Appellate Procedure, [claimant] had 60 days from the Appeals Council's notice of denial in which to file his appeal").

### B.  Evidence of Record

In her decision, the ALJ set forth a detailed recitation of the underlying medical evidence in this case.  PageID 83-91.  Plaintiff, in his Statement of Errors, sets forth a detailed summary of the record evidence.  Doc. 8 at PageID 962-69.  The Commissioner, in response, defers to the ALJ's recitation of the relevant medical evidence and presents no specific objection to Plaintiff's summary.  Doc. 11 at PageID 988.  Accordingly, except as otherwise noted in this Report & Recommendation, the undersigned incorporates Plaintiff's undisputed summary and the ALJ's recitation of the evidence.

## II.

### A.  Standard of Review

The Court's inquiry on a Social Security appeal is to determine (1) whether the ALJ's non-disability finding is supported by substantial evidence, and (2) whether the ALJ employed the correct legal criteria.  42 U.S.C. § 405(g); *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).  In performing this review, the Court must consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  When substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if substantial evidence also exists in the record upon which the ALJ could have found Plaintiff disabled.  *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001).  Thus, the ALJ has a "'zone of choice' within which he [or she] can act without the fear of court interference."  *Id*. at 773.

The second judicial inquiry -- reviewing the correctness of the ALJ's legal analysis -- may result in reversal even if the ALJ's decision is supported by substantial evidence in the

record.  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009).  "[A] decision of the Commissioner will not be upheld where the [Social Security Administration] fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right."  *Bowen*, 478 F.3d at 746.

### B.    "Disability" Defined

To be eligible for disability benefits, a claimant must be under a "disability" as defined by the Social Security Act.  42 U.S.C. § 423(d)(1)(A).  Narrowed to its statutory meaning, a "disability" includes physical and/or mental impairments that are both "medically determinable" and severe enough to prevent a claimant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies.  *Id.*

Administrative regulations require a five-step sequential evaluation for disability determinations.  20 C.F.R. § 404.1520(a)(4).  Although a dispositive finding at any step ends the ALJ's review, *see Colvin*, 475 F.3d at 730, the complete sequential review poses five questions:

1.    Has the claimant engaged in substantial gainful activity?

2.    Does the claimant suffer from one or more severe impairments?

3.    Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments (the "Listings"), 20 C.F.R. Subpart P, Appendix 1?

4.    Considering the claimant's RFC, can he or she perform his or her past relevant work?

5.    Assuming the claimant can no longer perform his or her past relevant work -- and also considering the claimant's age, education, past work experience, and RFC -- do significant numbers of other jobs exist in the national economy which the claimant can perform?

20 C.F.R. § 404.1520(a)(4); *see also Miller v. Comm'r of Soc. Sec.*, 181 F.Supp.2d 816, 818 (S.D. Ohio 2001).  A claimant bears the ultimate burden of establishing that he or she is disabled

under the Social Security Act's definition. *Key v. Comm'r of Soc. Sec.*, 109 F.3d 270, 274 (6th Cir. 1997).

**III.**

On appeal, Plaintiff argues that the ALJ erred in: (A) weighing the medical opinion evidence; and (B) finding him not fully credible. Doc. 8 at PageID 961.

### A.    Medical Opinion Evidence

Plaintiff first claims that the ALJ erred in assessing the opinion of his treating psychiatrist Sarita Mahajan, M.D.[4]  "[T]he Commissioner's regulations establish a hierarchy of acceptable medical source opinions[.]"  *Snell v. Comm'r of Soc. Sec.*, No. 3:12-cv-119, 2013 WL 372032, at *9 (S.D. Ohio Jan. 30, 2013).  Treating physicians and psychologists top the hierarchy.  *Id*. "Next in the hierarchy are examining physicians and psychologists, who often see and examine claimants only once."  *Id*.  "[N]on-examining physicians' opinions are on the lowest rung of the hierarchy of medical source opinions."  *Id*.  "The regulations provide progressively more rigorous tests for weighing opinions as the ties between the source of the opinion and the individual [claimant] become weaker."  *Id*. (citing SSR 96-6p, 1996 WL 374180, at *2 (July 2, 1996)).

"An ALJ is required to give controlling weight to 'a treating source's opinion on the issue(s) of the nature and severity of [the claimant's] impairment(s)' if the opinion 'is well-

---

[4] Plaintiff also argues that the ALJ erred in granting great weight to consultative examiner Donald Kramer, Ph.D.'s opinion, yet not adopting one of his limitations -- that Plaintiff "may need additional supervision compared to co-workers[,]" PageID 826 -- into the RFC determination.  Doc. 8 at PageID 977.  The Commissioner argues, *inter alia*, that this part of Dr. Kramer's opinion cannot be considered a functional limitation because it is speculative, and, regardless, that the RFC adequately accounted for Plaintiff's distractibility (the "underlying limitation" behind this aspect of Dr. Kramer's opinion).  Doc. 11 at PageID 993.  Finding error in the ALJ's analysis of Dr. Mahajan's opinion, the undersigned makes no finding with regard to this alleged error.  On remand, the ALJ shall specifically address the "additional supervision" element of Dr. Kramer's opinion while appropriately weighing all medical opinion evidence and determining anew Plaintiff's RFC.

supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record.'" *LaRiccia v. Comm'r of Soc. Sec.*, 549 F. App'x 377, 384 (6th Cir. 2013) (citation omitted) (alterations in original). This requirement is known as the "treating physician" rule. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (citation omitted). Greater deference is given to treating source opinions "since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations[.]" 20 C.F.R. § 404.1527(c)(2); *see also Blakley*, 581 F.3d at 406. Thus, an ALJ must give controlling weight to a treating source if the ALJ finds the treating physician's opinion well-supported by medically acceptable evidence and not inconsistent with other substantial evidence in the record. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).

Closely associated with the treating physician rule is the "good reasons rule," which "require[s] the ALJ to always give good reasons in [the] notice of determination or decision for the weight given to the claimant's treating source's opinion." *Blakley*, 581 F.3d at 406-07. "Those good reasons must be 'supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" *Id.*

Thus, when the ALJ declines to give controlling weight to a treating physician's assessment, "the ALJ must still determine how much weight is appropriate by considering a number of factors, including the length of treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion,

consistency of the opinion with the record as a whole, and any specialization of the treating physician." *Id.* at 406; *see also* 20 C.F.R. § 404.1527(c).[5]  In addition, unless the opinion of the treating source is entitled to controlling weight, an ALJ must "evaluate all medical opinions according to [these] factors, regardless of their source[.]"  *Walton v. Comm'r of Soc. Sec.*, No. 97-2030, 1999 WL 506979, at *2 (6th Cir. June 7, 1999).

An ALJ is not required to accept a physician's conclusion that his or her patient is "unemployable."  Whether a person is disabled within the meaning of the Social Security Act is an issue reserved to the Commissioner, and a treating physician's opinion -- that his or her patient is disabled -- is not "give[n] any special significance."  20 C.F.R. § 404.1527(d)(3); *see Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) (stating that "[t]he determination of disability is ultimately the prerogative of the Commissioner, not the treating physician").  However, "[t]here remains a presumption, albeit a rebuttable one, that the opinion of a treating physician is entitled to great deference."  *Hensley v. Astrue*, 573 F.3d 263, 266 (6th Cir. 2009).

In May 2013, after treating Plaintiff for three months, Dr. Mahajan diagnosed Plaintiff with bipolar and anxiety disorders, and opined that he has no limitations in regard to activities of daily living; slight limitations in maintaining social functioning; moderate limitations in concentration, persistence, or pace; and moderate limitations in regard to episodes of

---

[5] In essence, "opinions of a treating source . . . must be analyzed under a two-step process, with care being taken not to conflate the steps."  *Cadle v. Comm'r of Soc. Sec.*, No. 5:12 CV 3071, 2013 WL 5173127, at *5 (N.D. Ohio Sept. 12, 2013).  Initially, "the opinion must be examined to determine if it is entitled to controlling weight" and "[o]nly if . . . the ALJ does not give controlling weight to the treating physician's opinion is the opinion subjected to another analysis based on the particulars of" 20 C.F.R. § 404.1527.  *Id.*

deterioration and decompensation in work.[6]  PageID 955, 957.  Dr. Mahajan also assigned a

Global Assessment of Functioning ("GAF")[7] score of 60, and found that Plaintiff would likely be

absent from work as a result of his mental impairments approximately three days per month.  *Id.*

In weighing Dr. Mahajan's opinion, the ALJ assigned it "some weight" because:

> parts of the opinion are vague and conclusory.  For example, the opinion of
> the claimant's marked episodes of deterioration or decompensation in work
> is not fully supported by Dr. Mahajan's own objective findings, the
> remainder of her opinion or the overall evidence in the record.  It is also
> inconsistent with the findings of improvement and the assessed GAF of 60
> in the same opinion.

PageID 89.

The undersigned agrees with Plaintiff that the ALJ erred in assessing, and ultimately

discounting, Dr. Mahajan's opinion.  Initially, the Court notes that the ALJ failed to mention the

concept of controlling weight or set forth the required analysis.  *See Wilson*, 378 F.3d at 544; 20

C.F.R. § 404.1527(c)(2).  Because of the ALJ's failure in this regard, the Court cannot determine

---

[6] Whereas "moderate" functional limitations are "non-disabling," *see Sims v. Comm'r of Soc. Sec.*, 406 F. App'x 977, 980 (6th Cir. 2011), "marked" and "extreme" limitations are suggestive of disability.  *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 §§ 12.00(C) *et seq.*

[7] GAF is a tool used by health-care professionals to assess a person's psychological, social, and occupational functioning on a hypothetical continuum of mental illness.  Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed. 2000) ("DSM-IV").  "The most recent (5th) edition of the Diagnostic and Statistical Manual of Mental Disorders does not include the GAF scale."  *Judy v. Colvin*, No. 3:13cv257, 2014 WL 1599562, at *11 (S.D. Ohio Apr. 21, 2014); *see also* Diagnostic and Statistical Manual of Mental Disorders 16 (5th ed. 2013) ("DSM-V") (noting recommendations "that the GAF be dropped from [DSM-V] for several reasons, including its conceptual lack of clarity . . .  and questionable psychometrics in routine practice").  As set forth in the DSM-IV, however, a GAF of 31-40 indicates "[s]ome impairment in reality testing or communication," or "major impairment in several areas, such as work or school, family relations, judgment, thinking or mood (*e.g.*,…avoids friends, neglects family, and is unable to work)."  DSM-IV at 34.  A GAF score of 41-50 indicates "[s]erious symptoms (*e.g.*, suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (*e.g.*, no friends, unable to keep a job)."  *Id.*  A GAF score of 51-60 is indicative of "[m]oderate symptoms (*e.g.*, flat affect and circumstantial speech, occasional panic attacks)" or "moderate difficulty in social, occupational, or school functioning (*e.g.*, few friends, conflicts with peers or co-workers)."  *Id.*  A GAF score of 61 to 70 indicates "[s]ome mild symptoms (*e.g.*, depressed mood and mild insomnia)" or "some difficulty in social, occupational, or school functioning . . . but generally functioning pretty well."  *Id.*  A GAF score of 71 to 80 indicates "no more than slight impairment in social, occupational, or school functioning (*e.g.*, temporarily falling behind in schoolwork)."  *Id.*

whether she undertook the "two-step inquiry" required when analyzing treating source opinions. *See* note 5 *supra*; *see also Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376-78 (6th Cir. 2013); *Chrismon v. Colvin*, 531 F. App'x 893, 900 (10th Cir. 2013).  The lack of explanation regarding the "controlling weight [analysis] hinders a meaningful review of whether the ALJ properly applied the treating-physician rule that is at the heart of this regulation." *Gayheart*, 710 F.3d at 377 (citations omitted).  Such failure amounts to error. *See Aytch v. Comm'r of Soc. Sec.*, No. 3:13-cv-135, 2014 WL 4080075, at *5 (S.D. Ohio Aug. 19, 2014) (citation omitted).

Even assuming, *arguendo*, the ALJ adequately conducted the controlling weight test -- which the undersigned concludes she did not -- the ALJ nevertheless failed to provide good reasons for discounting the weight accorded to Dr. Mahajan's opinion.  The reasons given by the ALJ for according the opinion "some" weight, *see* PageID 89, relate only to Dr. Mahajan's finding regarding Plaintiff's marked episodes of decompensation or deterioration in work. *Id*. However, Dr. Mahajan never noted "marked" limitations and, instead, opined that Plaintiff was "moderately" limited in regard to episodes of decompensation or deterioration.  PageID 857. Accordingly, the ALJ's reasoning is inapplicable to the opinion actually given by Dr. Mahajan.

The Commissioner argues that such error is "inconsequential" because the ALJ's rationale for not accepting this limitation "is valid whether the degree of episodes of decompensation indicated was moderate or marked."  Doc. 11 at PageID 989.  However, the ALJ's critique related specifically to a "marked" limitation, and "it is the opinion given by an administrative agency rather than counsel's '*post hoc* rationale' that is under the Court's consideration." *Romig v. Astrue*, No. 1:12-cv-1552, 2013 WL 1124669, at *6 (N.D. Ohio Mar. 18, 2013) (citations omitted).

In addition to such error, the ALJ also failed to give any reason for rejecting other parts of Dr. Mahajan's opinion including, importantly, her opinion regarding Plaintiff's potential, disabling absenteeism -- *i.e.*, that Plaintiff would be absent from work approximately three times per month.  PageID 957; *see also* PageID 128 (wherein the VE testified that "[n]o more than one unscheduled absence a month . . . would be tolerated" in the unskilled jobs identified).  In fact, the ALJ incorrectly believed that Dr. Mahajan "indicat[ed] the claimant would be absent from work less than once a month."  PageID 89.  To the extent that the ALJ's opinion could be read to discount Dr. Mahajan's absenteeism limitation as "vague and conclusory," absent any specific explanation by the ALJ, such conclusory critique is insufficient to discount a work-preclusive limitation -- particularly where the VE testified that Plaintiff could not perform the identified jobs if he were to miss three days of work per month.  *See* PageID 128.

Based upon the foregoing, the undersigned finds that the ALJ failed to properly assess and give good reasons, supported by substantial evidence, for discounting the opinion of Plaintiff's treating psychiatrist.  *See Blakley*, 581 F.3d at 409-10 (holding that "the Commissioner must follow his own procedural regulations in crediting medical opinions").  Accordingly, the ALJ's non-disability finding must be reversed.

### B.    Credibility Assessment

In his second assignment of error, Plaintiff contends that the ALJ improperly found him less than fully credible.  Doc. 8 at PageID 977-79.  Finding remand warranted based upon the ALJ's failure to properly assess and weigh Dr. Mahajan's opinion, the undersigned makes no finding with regard to this alleged error.  Instead, Plaintiff's credibility -- along with all medical source opinions of record -- should be assessed anew on remand.

**IV.**

When the ALJ's non-disability determination is not supported by substantial evidence, the Court must determine whether to remand the matter for rehearing or to order the award of benefits. Generally, benefits may be awarded immediately "only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994); *see also Abbott v. Sullivan*, 905 F.2d 918, 927 (6th Cir. 1990). The Court may only award benefits where proof of disability is strong and opposing evidence is lacking in substance, so that remand would merely involve the presentation of cumulative evidence, or where proof of disability is overwhelming. *Faucher*, 17 F.3d at 176; *see also Felisky v. Bowen*, 35 F.3d 1027, 1041 (6th Cir. 1994); *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985).

In this case, evidence of disability is not overwhelming, as there are conflicting medical opinions in the record regarding Plaintiff's limitations. *See* PageID 152-55, 194-96, 820-26, 828-31, 955-57. Accordingly, the undersigned concludes that remand for further proceedings is proper and need occur. On remand, the ALJ should reassess all of the medical opinion evidence and determine anew Plaintiff's credibility and disability status.

**V.**

**IT IS THEREFORE RECOMMENDED THAT:**

1. The Commissioner's non-disability finding be found unsupported by substantial evidence, and **REVERSED**;

2. This matter be **REMANDED** to the Commissioner under the Fourth Sentence of 42 U.S.C. § 405(g) for proceedings consistent with this opinion; and

3. This case be **CLOSED**.

Date: _October 19, 2015_         _s/ Michael J. Newman_
                                          Michael J. Newman
                                          United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendation.  Pursuant to Fed. R. Civ. P. 6(d), this period is extended to **SEVENTEEN** days because this Report and Recommendation is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F), and may be extended further by the Court on timely motion for an extension.  Such objections shall specify the portions of the Report and Recommendation objected to, and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.  As is made clear above, this period is likewise extended to **SEVENTEEN** days if service of the objections is made pursuant to Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F).  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn,* 474 U.S. 140, 153-55 (1985); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).